NO.
12-06-00137-CR

 

IN THE COURT OF APPEALS 

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

PAMELA
CARTER WESTBROOK,           §                      APPEAL FROM THE 173RD

APPELLANT

 

V.        §                      JUDICIAL
DISTRICT COURT OF

 

THE STATE OF TEXAS,

APPELLEE   §                      HENDERSON COUNTY, TEXAS

                                                                                                                                                           


MEMORANDUM
OPINION

            Pamela
Carter Westbrook appeals her conviction for theft of a firearm.  In her sole issue, Appellant challenges the
sufficiency of the evidence supporting her conviction.  We affirm.

 

Background

            Appellant was charged with the theft
of a firearm from Terry Ward, her friend and former lover.  The firearm was one of several firearms that
were in a gun safe at Ward’s home.  This
gun safe, along with its contents, disappeared one weekend while Ward was on a
hunting trip.  Following a jury trial,
Appellant was found guilty of the offense. 
The trial court sentenced her to two years of confinement, probated for
three years, and ordered her to pay Ward $3,500.00 in restitution.  This appeal followed.

 

Sufficient Corroboration of Accomplice Witness
Testimony








            In one issue, Appellant challenges
the sufficiency of the evidence supporting her conviction.  More specifically, Appellant argues that the
testimony of her two accomplices, Christopher Gibson (“Chris”) and Travis
Gibson (“Travis”), was not sufficiently corroborated to be admissible as
evidence.[1]

Standard
of Review

Article
38.14 of the Texas Code of Criminal Procedure provides that

 

[a] conviction cannot be had upon the testimony of an
accomplice unless corroborated by other evidence tending to connect the
defendant with the offense committed; and the corroboration is not sufficient
if it merely shows the commission of the offense.

 

 

Tex. Code Crim. Proc. Ann. art. 38.14
(Vernon 2005).  The test for weighing the
sufficiency of corroborative evidence is to eliminate from consideration the
testimony of the accomplice witnesses and then examine the testimony of other
witnesses to ascertain if there is evidence that tends to connect the accused
with the commission of the offense.  Hernandez
v. State, 939 S.W.2d 173, 176 (Tex. Crim. App. 1997) (citing Reed
v. State, 744 S.W.2d 112, 125 (Tex. Crim. App. 1988)).  The nonaccomplice evidence need not be
sufficient in itself to establish the accused’s guilt beyond a reasonable doubt.  Id.  Nor is it necessary for the nonaccomplice
evidence to directly link the accused to the commission of the offense.  Id.  Article 38.14 is satisfied if there is some
nonaccomplice evidence that tends to connect the accused to the commission of the
offense alleged in the indictment.  Id.  When reviewing the record, all facts and
circumstances may be looked to as furnishing the necessary corroboration. Mitchell
v. State, 650 S.W.2d 801, 807 (Tex. Crim. App. 1983).  Further, the corroborative evidence may be
circumstantial or direct.  Reed,
744 S.W.2d at 126.

Discussion

            At trial, the State presented
testimony from the accomplice witnesses, Chris and Travis.  They testified that, on the evening of
Friday, January 14, 2005, Appellant arrived at the home of Chris’s sister.  Appellant was driving a pickup truck with a
gun safe in the back.  She asked Chris
and Travis to pry open the safe for her, which they did.  Inside the safe were a number of firearms and
credit cards.  Some of these cards were
in Appellant’s name, and some were in Ward’s name.  According to Chris, Appellant had to activate
some of these cards, which she did later and in his presence by using
information from a “tablet” containing Ward’s personal information.

            These witnesses also testified that
on Saturday, January 15, Appellant went into a bank and used one or more credit
cards to get a cash advance.  Chris
testified that the cash advance had been $3,000.  That same day, Appellant, Chris, and Travis
traveled together to Kaufman, Texas, where Appellant delivered the guns to a
female relative of hers so that the relative could sell them for her.  Afterwards, they traveled to Cleburne, Texas,
where Appellant purchased a gold necklace from a pawn shop.  Finally, on Sunday, the group traveled to
Waco where they purchased a cellular telephone, as well as other items, at an
Office Max business supply store. 
According to Chris, Appellant instructed him that they had to use the
credit cards before Ward returned home. 
Chris stated that Appellant believed Ward would report that the cards
had been stolen.

            Appellant testified at trial.  She admitted her prior relationship with
Ward.  She admitted that she had a key to
Ward’s home and knew Ward’s alarm code. 
She also admitted that, on Friday, January 14, 2005, Ward had told her
he was going on a hunting trip that weekend. 
Finally, she admitted that, on that same day, she had gone to Ward’s
home to pick up some meat Ward had offered her.[2]

            Appellant denied any part in the
theft of Ward’s gun safe.  She testified
that she believed Ward had “set [her] up” because he was mad at her based upon
a recent disagreement the two had.  She
also suggested that Chris could have committed the crime and asserted that
Chris was trying to blame her because she had rebuffed his attempts at
establishing a relationship between them. 
Appellant admitted traveling to Kaufman and having relatives in Kaufman,
but denied being part of any gun transaction in that town.  

            Appellant admitted that she had
obtained possession of some credit cards but stated that she had found the
credit cards in her truck.  Appellant
testified that she had thought Ward, or a friend of Ward’s, had brought the
cards over in an attempt to make up for a recent argument.  She testified that she was able to activate
the cards as required because Ward had given her the necessary information.  She also admitted taking out the cash advance
at the bank and making the purchases at the Cleburne pawn shop and the Waco
Office Max.

            Ward testified that, on the morning
of Friday, January 14, 2005, he left his home to go on a weekend hunting
trip.  According to Ward, he did not
return from this trip until the following Sunday afternoon.  When Ward returned home, he found that his
gun safe and a notebook had been stolen from his home.  He stated that the safe had contained, among
other things, credit cards and firearms. 
He testified that the notebook stolen from his home contained personal
information such as his mother’s maiden name. 
He also testified that he had learned Appellant had charged
approximately $4,000 on the weekend in question.

            Ward stated that he did not notice
any signs of a forced entry into his home. 
Because he suspected that Appellant might have been involved, Ward
called her to inquire about the matter. According to Ward, Appellant asked him
not to report the matter to law enforcement for a few days because “she might
be able to find something out.”  Despite
offering to check into the matter and contact him in a few days, Appellant did
not call Ward back as promised.  He
eventually contacted the Henderson County Sheriff’s Department.  Ward stated that he did not give Appellant
permission to pry open his gun safe or take any firearms from his home.

            Bank teller Brenda Richardson
testified that Appellant had entered her bank on Saturday, January 15, and had
used two credit cards to get cash advances totaling $3,000.  She also authenticated the bank records of
this transaction.  These records were
evidence that the two credit cards used were two of the credit cards that had
been in Ward’s gun safe.

            Investigator Paul Habelt of the
Henderson County Sheriff’s Department testified regarding his investigation of
the matter.  Habelt met with Appellant,
who, according to Habelt, admitted having recently obtained possession of some
credit cards and allowed Habelt to search her purse, in which he found receipts
from the Cleburne pawn shop and the Waco Office Max.  Appellant also had a bag, which Habelt
searched and found five of the stolen credit cards inside.  Habelt stated that Appellant told him she had
found the cards on the front seat of her truck on Saturday, January 15.  He also stated that Appellant later called
him and told him she had found an additional credit card in her house that had “suddenly
showed up” on the fireplace mantle of her home. 
Habelt arrested Appellant when she brought this final card to him.

            In summary, the nonaccomplice
evidence linked Appellant to other items, specifically the credit cards, that
had been in the safe at the time the safe was stolen.  Another item stolen from the home, Ward’s
record book, roughly matched the description of the “tablet” described by
Chris.  Chris testified that Appellant
had used this tablet to get Ward’s personal information necessary to activate
the unactivated credit cards.  Further,
the nonaccomplice evidence established that Appellant had charged $4,000 that
weekend.  Finally, Ward testified that
Appellant did not call him back after asking him to wait a few days to contact
law enforcement.  This is some evidence
that Appellant was attempting to delay arrest. 
The nonaccomplice evidence tends to connect Appellant to the theft of a
firearm from Ward’s gun safe.  Because
there is some nonaccomplice evidence tending to connect Appellant to the
commission of the offense, we conclude that the nonaccomplice evidence
sufficiently corroborates the accomplice testimony.  See Hernandez, 939
S.W.2d at 176.

            We overrule Appellant’s sole issue.

 

Disposition

We
affirm the judgment of the trial court.

 

 

 

                                                                                                    SAM GRIFFITH   

                                                                                                               Justice

 

 

Opinion delivered May 23, 2007.

Panel
consisted of Worthen, C.J., Griffith, J., and Hoyle, J.

 

 

 

 

 

 

 

 

 

(DO NOT PUBLISH)











[1] We have assumed, arguendo, that Chris and Travis were accomplices.





[2] Both Ward and Appellant testified that it was not unusual for Ward to
provide Appellant with food and other support.